# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN OVERSIGHT**, *Plaintiff,* v. **U.S. DEPARTMENT OF STATE**, *Defendant.* | Case No. 1:19-cv-02934-CRC |

### DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**INTRODUCTION**

Pursuant to this Court's questions at last week's scheduling teleconference, Defendant the Department of State ("State") submits this sur-reply concerning Plaintiff American Oversight's motion for a preliminary injunction. This sur-reply is limited to the questions raised by the Court at the teleconference, and their implications to this case.

**ARGUMENT**

I.      The Status of State's Response to Plaintiff's FOIA Requests

In light of State's decision to grant Plaintiff's request for expedited processing, State is committed to producing responsive, non-exempt documents "as soon as practicable." *See* 5 U.S.C. § 552(a)(6)(E)(iii). State has begun the searches for potentially responsive documents, but given the speed with which it had to conduct these searches, the numbers discussed below are preliminary estimates, and there remains substantial uncertainty about the expected number of responsive records and the total time needed to process Plaintiff's requests.

With respect to Plaintiff's request for records concerning Rudolph Giuliani and related records, the Department has initially identified seven components or repositories that are reasonably likely to contain responsive documents; of those, the Department has completed initial searches of three, and searches of the other four are ongoing. So far, those searches have yielded approximately 9,110 hits on potentially responsive records. However, that number is under-representative of the total number of potentially responsive records because, until the documents are loaded into State's document review platform, emails and attachments are not counted as separate documents. It is possible that a number of these documents may be duplicative of others in the collection.

Plaintiff's other request, concerning documents related to Ambassador Yovanovitch, has a similar status. The Department has so far identified eleven components or repositories to be

1

searched, four of which have had initial searches completed, and the other seven have searches ongoing.  So far, these initial searches have returned approximately 9,200 hits on potentially responsive records.  This number again does not count emails and attachments separately.  State has begun to ingest potentially responsive documents into its review platform but that process is not yet finished.  It is also possible that the collection gathered thus far contains duplicates.

Given the substantial number of searches remaining, and State's inability to account for duplicates and email attachments, the total universe of potential records is highly uncertain.  There is also substantial uncertainty with respect to the amount of time that will be needed to appropriately redact responsive records.  Because the Department's search is in its initial stages, and because the Department has not yet ingested many records into its document review platform, the Department is currently unable to identify with certainty what FOIA exemptions may or may not apply.

> II.     Congressional Oversight and Plaintiff's FOIA Request

The Court inquired as to the extent of any overlap of Plaintiff's FOIA requests with a congressional subpoena on related topics.  *See* Hrg. Transcript at 4.  Generally speaking, Plaintiff's FOIA requests are a subset of documents sought by Congress. The congressional oversight process, however, is separate and independent from FOIA.

State is treating all FOIA requests concerning Ukraine in accordance with ordinary FOIA procedures, irrespective of document requests from Congress.  As described above, State has tasked specific searches tailored to Plaintiff's FOIA requests, and has already begun collecting records from those searches.  State has a statutory obligation to produce non-exempt records that are responsive to Plaintiff's FOIA requests, and thus the focus in this case should be limited to those requests.

The Court also requested information concerning the potential overlap between privileges that may be asserted over documents responsive to the congressional subpoena and statutory exemptions that would be applicable to records responsive to Plaintiff's FOIA requests. *See* Hrg. Transcript at 4-5.   State does yet know what exemptions will apply to the FOIA documents, nor the extent of what will or will not be produced to Congress.

Finally, the Court inquired as to past practice regarding whether or not the underlying evidence developed during impeachment proceedings became public.  *See* Hrg. Transcript at 5. During the most recent impeachment inquiry, Independent Counsel Kenneth Starr, pursuant to 28 U.S.C. § 595(c), prepared a more than 400-page report (the "Starr Report") that detailed "substantial and credible information that President William Jefferson Clinton committed acts that may constitute grounds for an impeachment."  *See* Referral From Independent Counsel Kenneth W. Starr in Conformity With The Requirements of Title 28 United States Code, Section 595(c), House Document 105-310, 105th Congress, 2d Session.  Congress received the Starr Report on September 9, 1998, and the House of Representatives published it on September 11, 1998.  State is not privy to what rules this Congress may be considering regarding the publication of information.

## CONCLUSION

For the reasons stated in the Department's opposition to Plaintiff's motion for a preliminary injunction, and for the reasons contained in this sur-reply, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Dated: October 23, 2019                                  Respectfully submitted,

                                                              JOSEPH H. HUNT
                                                              Assistant Attorney General
                                                              Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Joshua C. Abbuhl*
JOSHUA C. ABBUHL (D.C. Bar No. 1044782)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-8366
Facsimile: (202) 616-8470
E-mail: Joshua.Abbuhl@usdoj.gov

*Counsel for Defendant*