IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN OVERSIGHT**,<br><br>*Plaintiff,*<br><br>v.<br><br>**U.S. DEPARTMENT OF STATE**,<br><br>*Defendant.* | Case No. 1:19-cv-02934-CRC |

**JOINT STATUS REPORT**

Pursuant to the Court's January 14, 2022 minute order, Plaintiff American Oversight and Defendant United States Department of State ("State") hereby submit this Joint Status Report in this Freedom of Information Act ("FOIA") case.

**I.      Status of the Case**

State estimates that there are approximately 200 pages of potentially responsive records remaining in this case that are stored on State's unclassified network. State estimates that there are approximately 14,000 pages of potentially responsive pages left to process on State's classified network; however, as discussed in a previous status report, the number of pages stored on State's classified network is subject to some uncertainty. *See* ECF No. 43, at 1-2. In the parties' last joint status report, the parties reported that they were conferring about State's processing rate, but had not yet reached an agreement. ECF No. 43, at 2. The Court ordered the parties to file a joint status report indicating whether the parties had reached an agreement on the processing rate for the remaining documents, and if not, to set forth the parties' competing proposals for a processing rate. Jan. 14, 2022 Minute Order. Because the parties were unable to

reach a complete agreement, they have outlined their proposals below for the Court's consideration.

## II.     State's Proposal

State recognizes that its recent processing rates in this matter are below its average pre-pandemic processing rates. However, due to ongoing limitations caused in large part by the COVID-19 public health crisis, it is not feasible for State to commit to processing any particular number of pages per month in this matter. Instead, State proposes that it continue to exercise its best efforts to process as many pages as reasonably possible in light of State's current processing capabilities.

When State processes records potentially responsive to a FOIA request, State must review those records for responsiveness, assess whether any redactions are required, apply any such redactions, obtain necessary internal and external clearances, and release the non-exempt portions of any responsive record to the requester. A record is not considered "processed" until it reaches the final step of this process (as applicable), whether it is released in full, denied in full, released in part, or excluded from production as being non-responsive.

The Office of Information Programs and Services ("IPS"), which is the State component responsible for responding to most requests for records under the FOIA, currently employs 30 retired Foreign Service Officers as FOIA litigation reviewers to leverage their knowledge of the Department, including their subject matter expertise and experience handling classified information, such as foreign government information. This number is a downward departure from the 47 reviewers IPS employed prior to the pandemic.[1] This reviewer staff mostly works on

---

[1] State notes that many of these retired employees are within the age groups identified by the Centers for Disease Control and Prevention as being at risk for serious illness from COVID-19.

2

a part-time basis, as their employment status within State limits them to a maximum of 1,040 hours per calendar year. Because the reviewer is involved in nearly every step of processing, both this work hour limitation and the fact that IPS is now operating with a thinner staff since before the start of the pandemic—despite an increase in its number of FOIA cases since then—necessarily constrains the pace at which it can process potentially responsive records.

In addition, as part of State's line-by-line review process, State's reviewers consult other State employees (including, for example, those in State's regional bureaus) as appropriate. These consultations may occur more than once in the process and are an important part of State's decision about the applicability of any FOIA exemption, as they inform State about the sensitivity of the documents or subject matter at issue. At least for documents containing substantive information that were created within the previous five years, which include all of the records in this matter, IPS's general policy is that such documents must be reviewed by the relevant bureaus or offices within State, or the relevant bureaus must be at least consulted, prior to finalizing release determinations. For some matters, little or no consultation is necessary; however, for others, consultation is required for all or a sizeable majority of the responsive records, and the length of the consultation can substantially vary depending on the subject matter.

In late December 2021, State issued COVID-19 workforce guidance that will remain in effect at least until February 13, 2022, and is being periodically reevaluated. According to that guidance, only employees performing mission-critical functions are required to work onsite. Mission-critical functions are those that require access to classified systems to perform essential national security functions, including classified interagency collaboration. As State continues to carefully monitor the situation in the National Capital Region with respect to the pandemic to

protect the health and safety of its employees, State notes that it has limited on-site availability of required personnel, including personnel outside IPS that are integral to the process of clearing documents for final release or withholding. State also notes that the majority of State's FOIA personnel continue to work remotely, limiting their access to State's classified systems, which is of particular import to this matter because the large majority of the remaining records to be processed reside in those systems.

Finally, if a reviewer determines that a document originated within State but contains another federal agency's information, an IPS employee will send that document to the relevant federal agency for consultation. If the reviewer determines that a document originated with another federal agency, they redact any State information that State is proposing to withhold under the FOIA and an IPS employee sends the document to that federal agency for review and direct reply to the requester.[2] However, State exercises no control over the timing of clearances provided by these external entities, without which State cannot complete its processing.

State shares Plaintiff's desire to conclude this matter as expeditiously as possible. However, for the reasons described above, it cannot commit to any minimum monthly processing rate. In light of limitations imposed by the ongoing pandemic, State proposes to exercise its best efforts to process as many pages as possible per month. An order above and beyond that proposal would likely require State to redirect its finite and already thinly-stretched resources at the direct expense of other FOIA cases and requesters, and moreover, jeopardize State's ability to comply with existing court orders.

---

[2] State will also refer a document to an outside organization whenever the organization's confidential business information may be at issue. In accordance with Executive Order 12600 and 22 C.F.R. § 171.12, the Department must allow that organization the opportunity to object to the disclosure of the information on the basis that the information in the document is exempt from disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).

### III.     Plaintiff's Proposal

This Joint Status Report presents a narrow disagreement between the parties as to how to efficiently move forward in this case. State reports that there are approximately 200 pages of potentially responsive records remaining in this case that are stored on State's unclassified network. Plaintiff is simply asking that State be required to complete processing the small number of documents remaining on State's unclassified systems by a date certain—February 24, 2022—so that the parties may narrow the processing issues remaining in this case and move onto to addressing the potentially responsive pages on State's classified systems.

As stated in previous Joint Status Reports, Plaintiff recognizes the challenges State has faced in light of the ongoing pandemic—and indeed, has made every effort to be accommodating to the agency throughout the public health situation—but believes State must adapt to find a way to fully meet its legal obligations under the FOIA given the indefinite nature of the current public health challenges. At a minimum, at this point, it is reasonable to expect State to make a commitment that will give the parties some degree of certainty as to how and when this case will progress. State, however, has refused to make *any* commitment regarding a processing rate of even the small number—approximately 200 pages—of unclassified documents remaining in this case, let alone of the larger number of documents on State's classified systems.

Requiring State to complete processing the unclassified documents by February 24, 2022, will provide certainty regarding the resolution of this phase of processing and ensure the parties are able to continue their discussions regarding processing of the uncertain number of remaining classified records with a shared understanding as to when that processing will begin. Moreover, the deadline that Plaintiff proposes does not appear to require an acceleration of State's average processing rate for November and December 2021. *See* ECF No. 43, at 1 (State processed 230

pages in November and 170 pages in December). Without a deadline, however, Plaintiff has no assurance that State will in fact continue to process at that rate. As such, Plaintiff respectfully requests that the Court require State to complete processing on its unclassified systems by February 24, 2022.

**IV.     Areas of Agreement**

Although the parties have not agreed on a *rate* of processing for either the unclassified or classified pages, the parties have agreed that State may first prioritize the processing of the remaining unclassified records. Accordingly, regardless of any order regarding processing rates that the Court might enter, the parties request that the Court allow State to first process the remaining unclassified records. The parties further propose that they shall file a joint status report within one month of State's completion of the processing of the unclassified records, at which point the parties will provide further updates to the Court, including regarding next steps for processing of the remaining classified records.

DATED:  January 24, 2022                                  Respectfully submitted,

*/s/ Sarah Colombo*
Sarah Colombo, *pro hac vice* (NY Bar 5110408)
Hart W. Wood (DC Bar 1034361)
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5244
sarah.colombo@americanoversight.org
hart.wood@americanoversight.org

*Counsel for Plaintiff*

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Joshua C. Abbuhl*
JOSHUA C. ABBUHL (D.C. Bar No. 1044782)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-8366
Facsimile: (202) 616-8470
joshua.abbuhl@usdoj.gov

*Counsel for the Defendant*